**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arthur Miller, | No. CV-22-00848-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| United Parcel Service Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Defendant United Parcel Service, Inc's ("UPS") Rule 12(b)(6) Motion for Partial Dismissal. (Doc. 26.) Plaintiff Arthur Miller filed a Response (Doc. 28), and UPS filed a Reply (Doc. 29). The Court has considered the pleadings and relevant law and will grant in part and deny in part UPS's Motion for the following reasons.

**I.    BACKGROUND**

Miller worked for UPS as a preloader and part-time preload supervisor from September 2015 through July 2017. (Doc. 22 at 2.) UPS rehired him in October 2020 as a temporary, seasonal employee. (*Id.*) Miller's second stint with UPS ended in January 2021. (*Id.*) Plaintiff applied for and was offered an open UPS position at the Phoenix Air Gateway Center, and he cleared an FBI and TSA background check. (*Id.* at 3.) Miller's first shift in his new role was on the morning of March 1, 2021. (*Id.*) Later that day, a UPS human resources employee called Miller to inform him of his termination for failing to pass UPS's third-party background check. (*Id.*)

Miller filed his First Amended Complaint ("AC") on January 13, 2022. The AC has

added new factual allegations to the wrongful termination claim and adds a fourth claim of promissory estoppel. UPS now moves to dismiss Miller's state law claims for wrongful termination and promissory estoppel.

## II. LEGAL STANDARD

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## III. DISCUSSION

### A. *Garmon* Pre-emption

"*Garmon* pre-emption 'is intended to preclude state interference with the National Labor Relations Board's interpretation and active enforcement of the integrated scheme of regulation established by the NLRA.'" *Idaho Bldg. & Const. Trades Council, AFL-CIO v. Inland Pac. Chapter of Associated Builders & Contractors, Inc.*, 801 F.3d 950, 956 (9th Cir. 2015) (quoting *Chamber of Com. of U.S. v. Brown*, 554 U.S. 60, 65 (2008)). "When an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of interference with national policy is to be averted." *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959).

UPS argues *Garmon* applies because Miller's new factual allegations under his wrongful termination and promissory estoppel claims amount to allegations of direct dealing. Miller alleges he was promised employment and relied on that promise to his detriment when UPS terminated him. "An attempt by the employer to bypass the

bargaining representative in conducting negotiations constitutes direct dealing, a violation of § 8(a)(5) of the Act." *Facet Enters., Inc. v. N.L.R.B.*, 907 F.2d 963, 969 (10th Cir. 1990) (citing *Medo Photo Supply Corp. v. N.L.R.B.*, 321 U.S. 678, 683–84 (1944)). UPS argues the AC alleges direct dealing, because Miller's claims relate to promises UPS made outside of the collective bargaining agreement ("CBA"), which it cannot do.

Miller argues his claims are unrelated to direct dealing and are instead based upon UPS's violating provisions of the Airport Security Regulations and the FCRA. This argument is disingenuous. The AC contains no mention of the Airport Security Regulation or the FCRA related to the promissory estoppel claim. (*See* Doc. 22 at 8 ¶¶ 59–62.) In his wrongful termination claim, Miller alleges "he was wrongfully terminated in violation implied in-fact promise of employment and assurances of job security in company personnel manuals or memoranda." (Doc. 22 at 7 ¶ 55.) The Court agrees Miller's allegations for both claims involve direct dealing, which is preempted under *Garmon*.

However, Miller's wrongful termination claim also alleges UPS violated the FCRA and Airport Security Regulations in terminating him. The AC states the Airport Security Regulations prohibit employment if an applicant's is convicted of kidnapping within ten years of submitting an application. (Doc. 22 at 4 ¶¶ 22–23.) Miller alleges he was wrongfully terminated because he was convicted of kidnapping more than ten years prior to his applying (*Id.* ¶ 24), meaning the Airport Security Regulations did not prohibit his employment. Additionally, UPS did not provide a pre-adverse action notice to Miller as required by the FCRA. "The FCRA mandates that, before an employer may take adverse action against an employee or job applicant based on a consumer report, the employer must provide the consumer with 'a copy of the report' and 'a description in writing of the rights of the consumer . . . as prescribed by the Bureau [of Consumer Financial Protection] under section 1681g(c)(3) of this title.'" *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1092 (9th Cir. 2020) (quoting 15 U.S.C. § 1681b(b)(3)(A)). UPS does not address how these claims might be affected by the Garmon pre-emption and the Court finds these claims are not preempted. These claims fail for another reason discussed below.

UPS points out that Miller's wrongful termination claim is based on A.R.S. § 23-1501 which provides, in part, that an employee has a claim against an employer for termination if the employer has terminated the employment in violation of an Arizona statute. *See* A.R.S. § 23-1501(A)(3)(b). Here, Miller claims UPS terminated him in violation of the FCRA and Airport Security Regulation, both federal statutes. Miller argues that because Arizona enacted its own Fair Credit Reporting Act which mirrors the FCRA and has the same goals, the Court should not dismiss this claim. But the AC does not allege UPS violated Arizona's Fair Credit Reporting Act nor explain how Miller could plead such a violation. Therefore, Miller's alternative bases for wrongful termination may not be preempted under *Garmon*, but they are nonetheless defective for the reasons discussed above.

### B.    LMRA § 301

The Supreme Court has held that "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted and federal labor law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06; *see also Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) ("The preemptive force of section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement and any state claim whose outcome depends on analysis of the terms of the agreement.") (cleaned up).

The Ninth Circuit has employed a two-part test to determine if a state law claim is preempted by Section 301. *See Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059–60 (9th Cir. 2007). The first prong requires the Court to consider "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. *Id.* at 1059. "If the right exists solely as a result of the CBA, then the claim is preempted and [the Court's] analysis ends there." *Id.* But if the Court determines that that the right underlying the state law claim "exists independently of the CBA," then it proceeds to the second prong to examine whether the right is "substantially dependent on analysis of a

collective bargaining agreement." *Id.* A right is "substantially dependent on analysis" of a CBA if the claim can be resolved by "'looking to versus interpreting the CBA." *Id.* at 1060 (cleaned up). "If the latter, the claim is preempted; if the former, it is not." *Id.* If a state law claim is preempted by Section 301, it is barred by the LMRA's six-month statute of limitations. *See Milne Emps. Ass'n v. Sun Carriers*, 960 F.2d 1401, 1411 (9th Cir. 1991).

Miller concedes that his claim for wrongful termination based on the implied-in-fact promise of employment is preempted by Section 301 and that claim will be dismissed. Miller does not address how the promissory estoppel claim survives under Section 301. The promissory estoppel claim is based on the same facts as the implied promise under the wrongful termination claim. These claims would require interpretation of the CBA and are pre-empted.

### C. Statute of Limitations

UPS argues Miller's new claims should be dismissed because they were filed outside the statute of limitations. However, UPS makes this argument in a conclusory fashion in a footnote. Therefore, the Court will not consider this argument. *See In re Katz Interactive Call Processing Pat. Litig.*, No. 07-ML-01816-B RGK, 2009 WL 8636055, at *1–2 (C.D. Cal. Oct. 26, 2009) (refusing to consider conclusory argument made in a footnote).

### IV. CONCLUSION

Because Miller fails to state a claim for wrongful termination or promissory estoppel,

**IT IS ORDERED** granting UPS's Rule 12(b)(6) Motion for Partial Dismissal. (Doc. 26.)

Dated this 14th day of August, 2023.

_____
Honorable Susan M. Brnovich
United States District Judge